FILED
CLERK
4/11/2016 9:49 am
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SANDINO CAMPBELL,

                Plaintiff,

    -against-                                    15-CV-0871 (SJF)(GRB)

JOE BONIFACE, CORPORAL, SHIELD # 338, et al.,      **OPINION and ORDER**

                Defendants.
------------------------------------------------------------------X
FEUERSTEIN, District Judge:

      On February 12, 2015, incarcerated *pro se* plaintiff Sandino Campbell ("plaintiff") filed a complaint in this Court pursuant to 42 U.S.C. § 1983 ("Section 1983") against Michael Sposato ("Sheriff Sposato"), the Nassau County Sheriff; Corporal Joe Boniface, Shield # 338 ("Cpl. Boniface"); and four (4) unidentified corrections officers (the "'John Doe' defendants") designated by plaintiff as "Boniface's cadre of correction officers" (collectively, "defendants"), accompanied by an application to proceed *in forma pauperis*. By order dated April 28, 2015, *inter alia*, plaintiff's application to proceed *in forma pauperis* was granted; plaintiff's claims against Sheriff Sposato were *sua sponte* dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim for relief; and the Nassau County Attorney was directed to attempt to ascertain the full names and service address(es) of the "John Doe" defendants allegedly involved in the incident described in the Complaint and to provide such information to the Court and plaintiff. The April 28, 2015 order further provided, *inter alia*, that "[o]nce the information is provided to the Court by the Nassau County Attorney, plaintiff's complaint shall be deemed amended to reflect the full names of the 'John Doe' defendants. . . ."

1

By letter to the Court dated May 27, 2015, the Nassau County Attorney's Office, *inter alia*, provided the names of three officers, in addition to Cpl. Boniface, "whose names appear in the roster for the sector and time of the alleged incident. . . ," i.e., Corrections Officer Kane, Shield # 3034; Corrections Officer Oakes, Shield # 2968; and Corrections Officer Reid, Shield # 3030. (Docket Entry ["DE"] 11). Pursuant to the Court's April 28, 2015 order, *inter alia*, plaintiff's complaint was deemed amended to substitute those named officers for the "John Doe" defendants.

Pending before the Court is plaintiff's motion for leave to amend his complaint pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure to add the County of Nassau ("the County") as a defendant. Defendants oppose the motion on the basis that any amendment would be futile because plaintiff failed to exhaust available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §§ 1997e(a), and request that plaintiff's claims against them be dismissed for his failure to exhaust administrative remedies. For the reasons set forth below, plaintiff's motion is denied and his claims are dismissed in their entirety with prejudice.

I. Background

A. Original Complaint

In his original complaint, plaintiff alleged, *inter alia*, (a) that he is a "practicing [R]astafarian of the Church of Haile Selassie," (Compl. at 7, ¶ 4); (b) that when he was transferred into the Nassau County Correctional Center ("NCCC") from a New York state prison in "December 2013 [sic]," an unidentified corrections officer at the NCCC confiscated one (1) of

2

his two (2) religious "crowns" that his religion requires him to wear, (id. at 6-7, ¶¶ 3, 5); (c) that when he requested to attend Rastafarian services "in and about January 2014 [sic]," the NCCC's "chaplin" informed him that the NCCC "does not permit, nor acknowledge [R]astafarian services" and that he "must change his religion to go to services [t]here," (id. at 7-8, ¶ 6); (d) that shortly thereafter, when he attempted to receive a visitor to the NCCC wearing his remaining religious crown, Cpl. Boniface "and his cadre of officers" stopped him, (id. at 8, ¶ 7), and Cpl. Boniface ordered him "not to wear [his] [R]astafarian crown at any time in or around the [NCCC][,]" (id. at 8-9, ¶¶ 8-9); (e) that when he objected and advised Cpl. Boniface that he is an "approved and recognized [R]astafarian" and "has [a] right to [] express his religious freedom[,]" (id., at 9, ¶ 10), Cpl. Boniface demanded that he remove the crown and "put it back in [his] cell[,]" (id. at 9-10, ¶ 11); (f) that "under menace and threat of direct order [he] had no choice but to return to his cell and remove his [crown][,]" (id. at 10, ¶ 12); (g) that upon returning from his visit, he requested a grievance form, but Cpl. Boniface "and his cadre" informed him that "there are 'no' grievance forms and he cannot grive [sic] the issue * * *[,]" (id. at 10-11, ¶ 14); and (h) that his grievance nevertheless "came to the attention of the grievance office[,]" (id. at 11, ¶ 15), and on January 29, 2015, he received "legal mail correspondence from the grievance unit that had been opened without his presence * * * [and that] was dated several days prior indicating [his] grievance will be denied in abscence [sic] of [a] timely response when * * * such time had expired[,]" (id. at 11-12, ¶¶ 15-18).

Plaintiff seeks: (1) "to enforce his civil rights, (Compl. at 13, ¶ 23); and (b) to recover compensatory and punitive damages in the amount of two million dollars ($2,000,000.00). (Id.)

3

B.    Plaintiff's Proposed Amended Complaint

Plaintiff's allegations in the proposed amended complaint regarding Cpl. Boniface's purported conduct are essentially consistent with his allegations in the original complaint, except that he alleges that the incident occurred on or about January 20, 2105,(Amended Complaint ["Am. Compl."], ¶ 10); and that Cpl. Boniface also "harassed and prevented [him] from attending Rastafarian services in retaliation for the grievance" he filed. (Id., ¶ 20). In addition, plaintiff alleges, *inter alia*, (1) that Correction Officers Oakes, Reid and Kane were all "present during [the] incident . . . and did nothing to protect [his] constitutional rights," (id., ¶¶ 11-13); and (2) that the County of Nassau "developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in the [NCCC], which cause [sic] the violation of [his] rights[,]" (id., ¶ 23), including (a) "inadequately and improperly investigat[ing] detainees' complaints of correction officer misconduct," (id., ¶ 24), and (b) "inadequately supervis[ing] and train[ing] its correction officers, including the defendant officers, . . . [and] not requir[ing] appropriate in-service training or re-training of correction officers who were known to have engaged in . . . misconduct[,]" (id., ¶ 25).

Plaintiff seeks "compensatory damages" in an unspecified amount, costs and "reasonable attorney's fees." (Am. Compl. at 7).

II.    DISCUSSION

A.    Standard of Review

Leave to amend should be freely given "when justice so requires[,]" Fed. R. Civ. P. 15(a)(2), "and a *pro se* litigant in particular should be afforded every reasonable opportunity to

4

demonstrate that he has a valid claim." Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (quotations and citation omitted). Nonetheless, leave to amend may properly be denied on the grounds of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 1234 (1962); see also TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 505 (2d Cir. 2014) ("Leave may be denied for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." (quotations and citation omitted)).

"Proposed amendments are futile if they would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." Thea v. Kleinhandler, 807 F.3d 492, 496-97 (2d Cir. 2015) (quotations and citation omitted). "Thus, the standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC, 783 F.3d 383, 389 (2d Cir. 2015); see also Krys v. Pigott, 749 F.3d 117, 134 (2d Cir. 2014) ("The adequacy of a proposed amended complaint to state a claim is to be judged by the same standards as those governing the adequacy of a filed pleading." (quotations and citation omitted)).

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

5

alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id.

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678, 129 S. Ct. 1937 (quoting Twombly, 550 U.S. at 555, 127 S. Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S. Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. 544, 127 S. Ct. at 1959.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P., 737 F.3d 166, 176 (2d Cir. 2013) (quotations and citation omitted); Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678, 129 S. Ct. 1937. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679, 129 S. Ct. 1937. "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.; see also Ruston v. Town Bd. of Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010).

Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." Arista Records, LLC v. Doe 3, 604 F.3d 110, 120-1 (2d Cir. 2010); accord Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 729-30 (2d Cir. 2013). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679, 129 S. Ct. 1937.

In deciding a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint.[1] Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); see also ASARCO LLC v. Goodwin, 756 F.3d 191, 198 (2d Cir. 2014), cert. denied, 135 S. Ct. 715, 190 L. Ed. 2d 441 (2014).

Moreover, although a *pro se* complaint "must be construed liberally to raise the strongest arguments it suggests[,] * * * [it] must state a plausible claim for relief." Nielsen, 746 F.3d at 93 (quoting Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013) (internal citations, quotation marks, and brackets omitted)).

B.     The PLRA

Section 1997e(a) of the PLRA provides that "[n]o action shall be brought with respect to

---

[1] Accordingly, in deciding this motion, I have considered only plaintiff's allegations in his complaint, proposed amended complaint and motion papers, see, e.g. Nielsen, 746 F.3d at 63, as well as the documents attached thereto.

prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Accordingly, the PLRA does not require the exhaustion of all administrative remedies, but only those that are 'available' to the inmate." Hubbs v. Suffolk County Sheriff's Dep't, 788 F.3d 54, 59 (2d Cir. 2015). "To be 'available' under the PLRA, a remedy must afford the possibility of some relief for the action complained of." Id. (quotations and citations omitted). "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." Id.

"[E]xhaustion is mandatory under the PLRA and * * * unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007); see also Woodford v. Ngo, 548 U.S. 81, 86, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002); accord Johnson v. Killian, 680 F.3d 234, 238 (2d Cir. 2012). "The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford, 548 U.S. at 93, 126 S. Ct. 2378 (alterations, quotations and citation omitted); see also Parisi v. Davidson, 405 U.S. 34, 37-38, 92 S. Ct. 815, 31 L. Ed. 2d 17 (1972) ("The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence– to make a factual

8

record, to apply its expertise, and to corrects its own errors so as to moot judicial controversies."); Matter of Gould Publ'g Co., 934 F.2d 457, 460 (2d Cir. 1991) ("the principal reasons for requiring exhaustion include protecting administrative autonomy by allowing agencies an opportunity to assert their policy preferences, apply their expertise, develop the factual record and correct their own errors, and conserving judicial resources by barring piecemeal review of cases that may in any event be mooted if the agency grants the relief sought.")

"The PLRA also was intended to reduce the quantity and improve the quality of prisoner suits." Woodford, 548 U.S. at 93, 126 S. Ct. 2378; see also Porter, 534 U.S. at 524-25, 122 S. Ct. 983. "Proper exhaustion reduces the quantity of prisoner suits because some prisoners are successful in the administrative process, and others are persuaded by the proceedings not to file an action in federal court." Woodford, 548 U.S. at 94, 126 S. Ct. 2378.

"[T]he PLRA exhaustion requirement requires proper exhaustion," Woodford, 548 U.S. at 93, 126 S. Ct. 2378; see also Johnson, 680 F.3d at 238, "that is, using all steps that the agency holds out, and doing so properly." Amador v. Andrews, 655 F.3d 89, 96 (2d Cir. 2011) (quotations and citation omitted); see also Porter, 534 U.S. at 524; 122 S. Ct. 983 ("All 'available' remedies must * * * be exhausted."); Macias v. Zenk, 495 F.3d 37, 43 (2d Cir. 2007) ("[T]o satisfy the PLRA a prisoner must * * * procedurally exhaust his available administrative remedies." (emphasis omitted)). "This entails both completing the administrative review process in accordance with the applicable procedural rules * * * and providing the level of detail necessary in a grievance to comply with the grievance procedures." Amador, 655 F.3d at 96 (alterations, quotations and citations omitted). "The exhaustion inquiry * * * requires that [the

9

court] look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." Espinal v. Goord, 558 F.3d 119, 124 (2d Cir. 2009).

"[F]ailure to exhaust is an affirmative defense under the PLRA, and * * * inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones, 549 U.S. at 216, 127 S. Ct. 910; see also Hubbs, 788 F.3d at 59 ("Because failure to exhaust is an affirmative defense, . . . defendants bear the initial burden of establishing, by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute[.]" (quotations, alterations and citations omitted)). Like other affirmative defenses, failure to exhaust may be grounds for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure if the defense appears on the face of the complaint. See Kucharczyk v. Westchester County, 95 F. Supp. 3d 529, 546 (S.D.N.Y. 2015); Butler v. Suffolk County, 289 F.R.D. 80, 92 (E.D.N.Y. 2013); see also Sewell v. Bernardin, 795 F.3d 337, 339 (2d Cir. 2015) ("Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises a statutory bar, * * * as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." (quotations and citation omitted); Kelly-Brown v. Winfrey, 717 F.3d 295, 308 (2d Cir. 2013) ("Affirmative defenses may be adjudicated at th[e] [pleadings] stage in the litigation * * * where the facts necessary to establish the defense are evident on the face of the complaint.")

Moreover, "the affirmative defense of exhaustion is subject to estoppel." Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004); see also Ruggiero v. County of Orange, 467 F.3d 170,

178 (2d Cir. 2006). "A prisoner may invoke the doctrine of estoppel when defendants took affirmative action to prevent him from availing himself of grievance procedures." Amador, 655 F.3d at 103 (quotations and citation omitted); see also Ruggiero, 467 F.3d at 178. "[V]erbal and physical threats of retaliation, physical assault, denial of grievance forms or writing implements, and transfers constitute such affirmative action." Amador, 655 F.3d at 103.

The Second Circuit formulated the following three (3)-part test in determining a failure to exhaust affirmative defense:

> "Depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact available to the prisoner. The court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense. If the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements."

Macias, 495 F.3d at 41 (quoting Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)); see also Amador, 655 F.3d at 102. "If any of the three parts is satisfied, the prisoner is deemed to have exhausted internal procedures for purposes of the PLRA." Amador, 655 F.3d at 102.

1. The NCCC's Inmate Grievance Procedure

The rules and regulations of the New York State Commission of Correction, applicable to the NCCC, see http://www.scoc.ny.gov/jailaddre.htm#Nassau, provide a three (3)-step process

11

for the handling of inmate grievances.² To initiate the process, "[a]n inmate must file a grievance within five days of the date of the act or occurrence giving rise to the grievance[,]" N.Y. Comp. Codes R. & Regs. tit. 9, § 7032.4(d), with the grievance coordinator designated by the chief administrative officer. Id., § 7032.4(e). A "grievance" is defined, in relevant part, as "a written inmate complaint concerning either written or unwritten facility policies, procedures, rules, practices, programs or the action or inaction of any person within the facility." N.Y. Comp. Codes R. & Regs., tit. 9, § 7032.2(a). "[A] grievance that is too vague to understand or fails to set forth supporting evidence or information may be returned to the inmate." Id., § 7032.4(f). "Within two business days after receipt of the grievance coordinator's written determination, the grievant may appeal to the chief administrative officer or his designee." Id., § 7032.4(j). "Within three business days of the receipt of the chief administrative officer's determination, any grievant may appeal any grievance denied by the facility administrator, in whole or in part, to the [Citizen's Policy and Complaint Review Council of the New York] State Commission of Correction ["CPCRC"] by indicating his/her desire to appeal on the inmate grievance form in the space provided for such purpose." Id., § 7032.5. Thus, it is clear that administrative remedies were available at the NCCC.

  2. Plaintiff's Grievances

Plaintiff attached to his complaint, *inter alia*, copies of his grievances, one handwritten

---

² Pursuant to the applicable regulations, "[t]he chief administrative officer of each local correctional facility shall ensure the development and implementation of written policies and procedures consistent [therewith]." N.Y. Comp. Codes R. & Regs., tit. 9, § 7032.3. The NCCC has done so. (See Am. Compl., Ex. E).

and one on a grievance form, dated January 20, 2015; an Inmate Grievance Receipt dated January 21, 2015; the Grievance Unit's request for more information dated January 23, 2015; and a copy of the NCCC's Inmate Handbook. On the grievance form dated January 20, 2015, plaintiff indicated that he was "[d]enied the right to express [his] religion" and requested "[t]hat the officer be told that [he is] allowed to express [his] Freedom of Religion and wear [his] Rastafarian 'crown,' and so this type of thing does not happen any more." (Am. Compl., Ex. A). In his handwritten grievance, plaintiff wrote:

> "On 3 separate occasions, I was told that I can not [sic] [wear] my Rastafarian 'crown' in or around [NCCC]. At that time I told [Cpl.] Boniface, that I am a Rastafarian and I am expressing my freedom of religion. The officer stated take 'it' off, the thing on [my] head, or you don't go to your visit![] I took off my crown and went to my attorney visit[.] When [I] come [sic] back to the dorm, I ask [sic] for an [sic] Grievance Form and I was told no[.] [T]his all happen between 8 and 9 AM on January 20, 2015[.]"

(Id.)

In his reply to defendants' opposition to his motion to amend, plaintiff asserts, *inter alia*, (1) that his grievance was investigated; (2) that "[t]he grievance investigator confirmed that [he] was denied [his] First Amendment right to practice [his] Rastafarian religion[,]" (Reply at 2); (3) that "[t]hereafter, the investigating officer corrected the violation of [his] First Amendment right by ordering supervisor of defendants and the corporals to allow [him] to practice [his] religion approximately three weeks after[] [he] filed the grievance[,]" (id.); and (4) that he "signed and accepted the Grievance Coordinator's decision which was favorable too [sic] [him]." (Id.) Plaintiff contends, in essence, that administrative remedies were not available to him because, having received a favorable decision on his grievances, "there was nothing left to appeal[] [and] the Chief Administrative Officer . . . could not provide any additional administrative remedy."

13

(Id.) Plaintiff does not allege a failure to implement the Grievance Coordinator's decision, nor challenge any conduct occurring after he received a favorable resolution of his grievances.

Since, *inter alia*, the NCCC corrected its own errors during the administrative process and granted plaintiff the relief he sought in his grievances, i.e., "by ordering [the] supervisor of defendants and the corporals to allow [him] to practice [his] religion" and wear his religious headgear in the NCCC, (Reply at 2), and plaintiff does not allege a failure to implement the Grievance Coordinator's decision, nor challenge any conduct occurring after he received a favorable resolution of his grievances, judicial review of his claims is moot. See, e.g. Parisi, 405 U.S. at 37-38, 92 S. Ct. 815 (holding that one of the purposes of the exhaustion doctrine is to allow an administrative agency "to correct[] its own errors so as to moot judicial controversies."); Gould Publ'g, 934 F.2d at 460 ("the principal reasons for requiring exhaustion include protecting administrative autonomy by allowing agencies an opportunity to . . . correct their own errors, and conserving judicial resources by barring piecemeal review of cases that may in any event be mooted if the agency grants the relief sought."); Wheeler v. Heckler, 719 F.2d 595, 600 (2d Cir. 1983) (holding that under "the normal standards of mootness," "judicial review of favorable decisions [at the administrative level] is generally unavailable.") Accordingly, plaintiff's motion to amend his complaint is denied as futile; defendants' application to dismiss plaintiff's claims in their entirety is granted; and plaintiff's claims are dismissed in their entirety with prejudice

III. CONCLUSION

For the reasons set forth above, plaintiff's motion to amend his complaint pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure is denied; defendants' application to

dismiss plaintiff's claims in their entirety is granted; and plaintiff's claims are dismissed in their entirety with prejudice as moot. The Clerk of the Court shall enter judgment in favor of defendants; close this case; and, pursuant to Rule 77(d)(1) of the Federal Rules of Civil Procedure, serve notice of entry of this order in accordance with Rule 5(b) of the Federal Rules of Civil Procedure.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed.2d 21 (1962).

SO ORDERED.

                                                                /s/
                                            Sandra J. Feuerstein
                                            United States District Judge

Dated: April 11, 2016
       Central Islip, New York